UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| TERRY LEE KLIMER,<br><br>            Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration,<br><br>            Defendant. | Case No. CV 15-1128-AJW<br><br>MEMORANDUM OF DECISION |

Plaintiff filed this action seeking reversal of the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for disability insurance benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

On January 20, 2011, plaintiff filed his application for disability insurance benefits alleging disability since February 1, 2004 due to bipolar disorder, manic depression, and severe back pain. [JS 2; Administrative Record ("AR") 92, 226]. On March 16, 2012, an Administrative Law Judge ("ALJ") issued a written decision denying benefits. [AR 75-87]. Thereafter, the Appeals Council granted plaintiff's request for review and remanded the case to the ALJ for further administrative proceedings. [AR 88-91]. Following a hearing, the ALJ issued a new decision on March 5, 2014 in which he concluded that plaintiff

was not disabled prior to his date last insured ("DLI"). [AR 18-34]. The ALJ found that during the relevant period, plaintiff had a severe mental impairment consisting of bipolar disorder. [AR 23]. The ALJ determined that plaintiff had no exertional limitations. The ALJ further found that plaintiff had nonexertional limitations restricting him to unskilled, low stress jobs requiring simple instructions, and that he could not perform his past relevant work. [AR 24-27]. Relying on the testimony of a vocational expert, the ALJ found that plaintiff could perform alternative medium, unskilled jobs that exist in significant numbers in the national economy, and therefore that plaintiff was not disabled prior to expiration of his insured status. [AR 27-29]. That decision became the Commissioner's final decision in this matter when the Appeals Council denied plaintiff's request for review. [JS 2; AR 1-6, 14-17].

## Standard of Review

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or is based on legal error. Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (internal quotation marks omitted). The court is required to review the record as a whole and to consider evidence detracting from the decision as well as evidence supporting the decision. Robbins v. Soc. Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld. Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002) (citing Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)).

## Discussion

**Treating source opinion**

Plaintiff contends that the ALJ erred in rejecting the opinion of his treating psychiatrist, Steven Allen, M.D. [See JS 4-9].

A treating physician's medical opinion is not binding on the Commissioner with respect to the existence of an impairment or the ultimate issue of disability. Tonapetyan v. Halter, 242 F.3d 1144, 1148

2

(9th Cir. 2001). However, a treating physician's opinion as to the nature and severity of an individual's impairment is entitled to controlling weight when that opinion is well-supported and not inconsistent with other substantial evidence in the record. Edlund v. Massanari, 253 F.3d 1152, 1157 (9th Cir. 2001); Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001); see 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *1-*2. Even when not entitled to controlling weight, "treating source medical opinions are still entitled to deference and must be weighed" in light of (1) the length of the treatment relationship; (2) the frequency of examination; (3) the nature and extent of the treatment relationship; (4) the supportability of the diagnosis; (5) consistency with other evidence in the record; and (6) the area of specialization. Edlund, 253 F.3d at 1157 & n.6 (quoting SSR 96-2p and citing 20 C.F.R. § 404.1527); Holohan, 246 F.3d at 1202.

If a treating source opinion is uncontroverted, the ALJ must provide clear and convincing reasons, supported by substantial evidence in the record, for rejecting it. If contradicted by that of another doctor, a treating or examining source opinion may be rejected for specific and legitimate reasons that are based on substantial evidence in the record. Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); Tonapetyan, 242 F.3d at 1148-1149; Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995).

Plaintiff's DLI for social security disability insurance purposes was June 30, 2007.[1] [AR 23]. Therefore, as the ALJ noted, the relevant time period for determining plaintiff's eligibility for disability insurance benefits was from February 1, 2004, plaintiff's alleged onset date, through June 30, 2007, his DLI. [See AR 23].

Plaintiff began treatment with Dr. Allen in July 2013, almost six years after his DLI. [AR 1082]. On August 8, 2013, Dr. Allen filled out a mental residual functional capacity ("RFC") assessment, in which he noted plaintiff's "chronic diagnoses" of bipolar disorder and severe depression. [AR 1046]. Dr. Allen opined that plaintiff was markedly limited in several areas of functioning, including the ability to maintain

---

[1] An individual who applies for disability benefits after the expiration of insured status must show that a disability that has existed continuously from on or before her date last insured until at least twelve months before the date of her application. See Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1999) (as amended); Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995); Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1458 (9th Cir. 1995).

concentration and attention, the ability to complete a normal workday, and the ability to get along with coworkers. [AR 1044-1045]. According to Dr. Allen, plaintiff "lack[ed] the psychiatric stability necessary for employment." [AR 1046].

Thereafter, plaintiff asked Dr. Allen to review his medical records dating from June 1, 2007 through July 22, 2013. [See AR 1082]. After reviewing those records, Dr. Allen drafted a letter dated December 4, 2013 in which he opined that, between June 1, 2007 and July 22, 2013, plaintiff's "bipolar diathesis and his reported adverse reactions to [] mood stabilization medications could have adversely affected his ability to maintain full time employment." [AR 1082-1083]. Dr. Allen noted that plaintiff had been hospitalized in December 2010 with symptoms of mania; he struggled with "adverse medicinal reactions, including weight gain, lethargy and amotivation"; and when he became symptomatic again in August 2012, his medication dosage had to be increased. [AR 1082].

In his decision, the ALJ discounted Dr. Allen's opinions on the ground that they were "not relevant" to plaintiff's disability claim. [AR 27]. The ALJ noted that Dr. Allen rendered his opinions after plaintiff's DLI, and that they did not address the severity of plaintiff's condition during the relevant time period, namely, February 2004 through June 2007.[2] [AR 26-27].

The ALJ's reason for rejecting Dr. Allen's opinion was clear and convincing. "[A]n ALJ may reject a medical opinion, even that of a treating doctor, where it was completed years after claimant's date last insured and was not offered as retrospective analysis." Coaty v. Colvin, 2015 WL 1137189, at *6 (D. Or. Mar. 11, 2015) (internal quotations omitted); see also Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1999) (as amended) (holding that the fact that a treating physician did not examine the claimant until more than a year after expiration of her insured status supported the ALJ's rejection of that physician's opinion); Lindquist v. Colvin, 588 F. Appx. 544, 547 (9th Cir. 2014) (holding that a remand was not required where the new evidence did not relate back to the relevant period of disability); Carroll v. Colvin, 2013 WL 4830747, at *1 (W.D. Wash. Sept. 11, 2013) (stating that "[t]he fact that the opinion does not relate to

---

[2] In his decision, the ALJ discussed "various" psychiatrists from the Department of Veterans Affairs ("VA"), but did not specifically mention Dr. Allen by name. [See AR 26-27]. Plaintiff, however, does not dispute that the ALJ's discussion included Dr. Allen, who worked at the VA. [See JS 7; see also AR 1043, 1082].

plaintiff's proof of disability during the relevant time period is a clear and convincing reason for rejection supported by substantial evidence"); McCutchen v. Colvin, 2013 WL 4046335, at *10 (D. Or. Aug. 7, 2013) (stating that "[e]vidence about [claimant's] increased depression after his date last insured is not probative, in that it does not materially relate back to the period of insurance"); Senter v. Astrue, 2011 WL 3420426, at *3 (C.D. Cal. Aug. 4, 2011 ) (holding that the ALJ's error in failing to consider medical opinions was harmless because those opinions did not address plaintiff's condition prior to his DLI).

Dr. Allen's August 8, 2013 mental RFC assessment was completed more than six years after the expiration of plaintiff's insured status. Significantly, it does not purport to assess plaintiff's mental condition at any time other than the time it was completed. [See AR 1044-1046]. In fact, it specifies that it is a "current evaluation." [AR 1044].

As for his December 4, 2013 letter, Dr. Allen offered an opinion regarding plaintiff's medical condition during the period from June 1, 2007 to July 22, 2013. Although June 2007 is within plaintiff's insured period, Dr. Allen's December 2013 opinion was based solely on his review of the medical records [AR 1082-1083], and there are no mental health records from June 2007. Therefore, Dr. Allen had no factual basis for rendering an opinion about plaintiff's mental condition on or before June 30, 2007, plaintiff's DLI. Indeed, Dr. Allen indicated in that letter that his opinion was based on events that occurred during and after December 2010, more than three years after plaintiff's DLI.[3] [See AR 1082-1083].

Additionally, the medical evidence from the relevant time period shows that plaintiff was functioning fairly well prior to his DLI. For example, in February 2004, plaintiff reported "doing well overall" and denied any current mood or psychiatric symptoms. [AR 642-643]. In October 2004, plaintiff was "doing well," and his mood was "normal." [AR 635; see also AR 641]. In December 2004, he was responding well to medications and had no mood problems. [AR 626-628]. In February 2005, plaintiff was reported to be stable on medications and had continued remission of mood symptoms. He denied any medication side effects. [AR 622]. He had no current mood or psychiatric problems. He reported looking for full-time

---

[3]   Further, Dr. Allen merely stated in his December 4, 2013 letter that plaintiff's mental condition "could have adversely affected his ability to maintain full time employment." [AR 1082-1083]. This statement does not contradict the ALJ's finding that plaintiff's mental impairment caused nonexertional limitations that restricted his RFC but were not disabling. [See AR 24].

employment and working part-time doing "odd jobs" as a painter. [AR 382, 384]. In March 2005, he was "feeling fine." [AR 379]. In October 2005, he reported discontinuing his medications. [AR 370]. In June 2006, he was reported to have been "lost to psych follow up." Plaintiff stated that he had stopped his medications because he was "functioning well without them." [AR 359]. There are no mental health records from 2007.[4]

The record contains only one opinion regarding plaintiff's mental condition before his DLI: the opinion of the testifying mental health expert, psychologist Sydney Garner. [See AR 57-59]. Dr. Garner opined that prior to June 30, 2007, plaintiff had no impairments maintaining activities of daily living; moderate impairments maintaining social functioning; moderate impairments maintaining concentration, persistence and pace; and no episodes of decompensation. According to Dr. Garner, plaintiff was capable of simple, unskilled, routine, and repetitive work in a "lower stress" work environment. [AR 58-59].

Plaintiff points to his December 2010 hospitalization as evidence of his disability [JS 7], but that occurred years after his DLI. Plaintiff also argues that the "ups and downs of [his] bipolar disorder can be exemplified by his multiple marriages, which have included serious physical violence and assaults involving guns and knives." [JS 8]. Plaintiff's contemporaneous reports in the record indicate that these incidents of domestic violence were due to his abuse of alcohol, and that he was no longer violent when sober. [AR 449, 498, 919].

In sum, because Dr. Allen did not render an opinion regarding plaintiff's mental state prior to his DLI, and because there is no medical evidence in the record to support the conclusion that plaintiff suffered from a disabling mental condition before his insured status expired, the ALJ did not err in rejecting Dr. Allen's opinion.

///

---

[4] Later medical records also shed light on plaintiff's mental condition prior to his DLI. When he was hospitalized in December 2010, plaintiff reported that he did not take psychotropic medications in the preceding eight years, and that he has been "fairly stable" over that time. [AR 447-449, 497]. Similarly, in August 2012, he told his medical provider that he was off medication from 2004 through December 2010, and during that time, he was "mentally healthy off medication." [AR 1002]. The record also shows that plaintiff's condition responds well to medication; for example, his symptoms in December 2010 resolved quickly with medication. [See, e.g., AR 495, 497; see also AR 463, 469].

**Credibility finding**

Plaintiff contends that the ALJ failed to give legally sufficient reasons for rejecting the alleged severity of plaintiff's subjective symptoms. [JS 15-18].

If the record contains objective evidence of an underlying physical or mental impairment that is reasonably likely to be the source of a claimant's subjective symptoms, the ALJ is required to consider all subjective testimony as to the severity of the symptoms. Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en banc); see also 20 C.F.R. §§ 404.1529(a), 416.929(a) (explaining how pain and other symptoms are evaluated). Absent affirmative evidence of malingering, the ALJ must then provide specific, clear and convincing reasons for rejecting a claimant's subjective complaints. Vasquez v. Astrue, 547 F.3d 1101, 1105 (9th Cir. 2008); Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 11601161 (9th Cir. 2008); Moisa, 367 F.3d at 885. "In reaching a credibility determination, an ALJ may weigh inconsistencies between the claimant's testimony and his or her conduct, daily activities, and work record, among other factors." Bray v. Comm'r of Social Sec. Admin., 554 F.3d 1219, 1221, 1227 (9th Cir. 2009); Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir.1997). The ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa, 367 F.3d at 885. If the ALJ's interpretation of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the court's role to "second-guess" it. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

During the administrative hearing, the ALJ asked plaintiff to testify about his physical and mental condition prior to his DLI. [AR 48]. Plaintiff testified that he was diagnosed in 1990 with bipolar disorder and manic disorder. [AR 49]. He took medications for this condition, which caused him to feel sleepy, foggy, and run down, and led him to take up to four naps per day. [AR 49-50]. He also suffered from constant back pain. [AR 51-52]. He could sit for only twenty to thirty minutes at a time and walk only half a block at a time. [AR 53]. Plaintiff claimed that his symptoms were so severe that he could not perform even a simple job. [AR 54-55].

The ALJ gave clear and convincing reasons for rejecting plaintiff's subjective allegations regarding his disabling mental symptoms. First, the ALJ noted that there was no medical evidence supporting

plaintiff's subjective allegations. [See AR 27]. "Although lack of medical evidence cannot form the sole basis of discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." Burch, 400 F.3d at 681; see Rollins, 261 F.3d at 857 ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disability effects."). As discussed above, the medical record shows that prior to his DLI, plaintiff was functioning fairly well and suffered from few mental symptoms. Furthermore, Dr. Garner, the only physician to render a medical opinion regarding plaintiff's condition prior to his DLI, found that plaintiff was capable of simple, unskilled, routine and repetitive work. [AR 59].

Second, the ALJ noted that plaintiff's mental health treatment prior to his DLI was conservative. [See AR 27]. In general, "a conservative course of treatment can undermine allegations of debilitating pain." Carmickle, 533 F.3d at 1162; see Orn v. Astrue, 495 F.3d 625, 638 (9th Cir. 2007). Here, there is no record that plaintiff sought counseling during the relevant time period, and he only infrequently visited his doctor. He was functioning well when he was taking medications and even after discontinuing them. [See, e.g., AR 359, 370, 379, 622, 626-628, 635, 641-643]. While he was taking medications, he reported no side effects. [See, e.g., AR 382, 622]. When plaintiff manifested symptoms of mania in December 2010, long after expiration of his insured status, he had been off his medications for years. [See AR 447-449, 497, 1002]. His symptoms resolved quickly when he began taking medications again. [See AR 495, 497; see also AR 463, 469]. Therefore, the ALJ permissibly rejected the alleged severity of plaintiff's mental symptoms prior to his DLI.

Regarding plaintiff's subjective physical allegations, the ALJ noted that plaintiff complained of chronic back pain in September 2004 and underwent a lumbar spine x-ray, which showed multilevel degenerative disc disease and evidence of an enchondroma (benign cartilage tumor)[5] at the iliac wing. [AR 25, 323, 326, 640]. Plaintiff told his treating physician that he worked part-time as a painter, that his lower

---

[5] "An enchondroma is a type of noncancerous bone tumor that begins in cartilage." Johns Hopkins Medicine Health Library, Enchondroma, available at http://www.hopkinsmedicine.org/healthlibrary/conditions/bone_disorders/enchondroma_85,P00115/ (last visited July 29, 2016).

back pain "affects his work as a painter" in that it caused "lots of pain after work" and limited his lifting activities to 50 pounds, but that it did not otherwise affect his daily activities. [AR 25, 323, 325]. Plaintiff also said that he did not take any medication for his back condition and did not need pain medication. [AR 25, 323, 640].

The record does not indicate that plaintiff received any further treatment for back pain prior to June 30, 2007. [See AR 25, 27]. During a "routine [follow up]" visit in September 2009, plaintiff's "only complaint" was of chronic low back pain that radiated down his legs bilaterally. He said that he had undergone a work-up for back pain five years earlier, which corresponds to his September 2004 office visit. [AR 766-767]. Plaintiff reported that he was taking 400 milligrams of ibuprofen three times daily for back pain, and that he "feels healthy and fine." [AR 766].

The ALJ provided clear and convincing reasons supported by substantial evidence for rejecting the alleged severity of plaintiff's back pain. First, the ALJ permissibly concluded that the objective medical evidence did not support plaintiff's subjective allegations prior to his DLI. [AR 25, 27]. Although plaintiff's September 2004 lumbar spine x-ray was positive for multilevel degenerative disc disease, there was no objective or clinical medical evidence of any resulting work-related functional limitations. See Burch, 400 F.3d at 681. As the ALJ noted, the nonexamining state agency physician found that plaintiff's back impairment was not severe. [AR 26, 423-424]. The orthopedic expert, Dr. Ghazi, testified that plaintiff did not have "any discernible orthopedic issue," and that "the studies did not substantiate any clear diagnosis rendering him disabled physically." [AR 26, 66-67]. Dr. Ghazi opined that from an orthopedic standpoint, plaintiff had no physical impairment. [AR 66-67].

Second, the ALJ pointed to inconsistencies between plaintiff's subjective allegations of disabling back pain and his contemporaneous statements to his doctors prior to his DLI. Notwithstanding his complaints of chronic back pain in September 2004, plaintiff reported that he continued to work part-time as a painter and took no medication for back pain. [AR 25, 27]. See Tonapetyan, 242 F.3d at 1148 (stating that the ALJ may rely on a claimant's inconsistent statements). Plaintiff also told his doctors that while his back pain prevented him from lifting more than 50 pounds, it did not limit his in other ways or restrict his activities of daily living. [AR 25, 27, 323, 382]. The alternative jobs identified by the ALJ at step five do not require lifting or carrying more than 50 pounds. [See AR 28].

Third, the ALJ noted that plaintiff sought treatment only once for back pain prior to his DLI, in September 2004, and that he did not seek or undergo other treatment, including "physical therapy, chiropractic adjustments, use of prescription pain medications, referral to a pain management specialist, referral to an orthopedist or neurologist, or fitting with a brace or cane" before his insured status expired. [AR 25, 27]. See Carmickle, 533 F.3d at 1162 (noting that "a conservative course of treatment can undermine allegations of debilitating pain"); Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989) (holding that the ALJ permissibly considered discrepancies between the claimant's allegations of "persistent and increasingly severe pain" and the nature and extent of treatment obtained).

The ALJ provided legally sufficient reasons for rejecting the alleged severity of plaintiff's back pain. See Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) (holding that the ALJ's credibility assessment was supported by a three-year gap in treatment for back complaints, inconsistencies in the claimant's testimony, and contradictions between her testimony and the medical evidence); Matthews v. Shalala, 10 F.3d 678, 679-680 (9th Cir. 1993) (holding that the ALJ permissibly rejected the alleged severity of the claimant's back impairment based on the claimant's inconsistent statements, lack of current treatment, minimal use of pain medication, and on two examining source opinions that the claimant could perform a narrowed range of medium work). Accordingly, plaintiff's contentions lack merit.

## Conclusion

For the reasons stated above, the Commissioner's decision is supported by substantial evidence and is free of legal error. Accordingly, the Commissioner's decision is **affirmed**.

**IT IS SO ORDERED.**

July 19, 2016

_____
ANDREW J. WISTRICH
United States Magistrate Judge